EASTERN DIS.
*March*, 1833.

MORAND'S HEIRS *vs.* MAYOR, &c., OF NEW-ORLEANS.

MORAND'S
HEIRS
*vs.*
MAYOR, ETC. OF
NEW-ORLEANS.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

Where a plantation was sold as containing ten arpents fronting on the then rear limit of the city of New-Orleans with seven in depth, which run on the bayou road, and the *locus in quo* was found to measure fourteen arpents in front, of which three on the right side of the road going to the bayou, did not touch the then limit of the city, the vendee was decreed to take ten arpents in front, beginning at the corner of the tract left of the bayou road, with the corresponding depth.

If, in the description, under which a plantation is sold for partition among the heirs and co-proprietors, there are words of doubtful import, they must be construed so as to refer to a sale of the entire plantation.

The title to a tract of land, acquired by adjudication, and which has been regularly transferred to the present occupant, is not affected by the manner in which the intermediate proprietors possessed and used the land, except so far as prescription may be interrupted.

For the prescription of ten and twenty years, there must be an uninterrupted, *bona fide* possession, and a title translative of property on a contract or deed under which the party is put in possession.

The sale of an entire tract of land by limits for a whole and definite price is sale *per aversionem,* and the circumstances control a problematical description of quantity.

So long as a person occupies a part of his plantation, his civil possession extends over the whole.

The situation of a tract of land so that the balls from the guns of a fort must pass over it, is insufficient to interrupt possession.

This was a petitory action, in which the plaintiffs, as heirs of the Chevalier de Morand, senior, claimed a tract of land situated in the city of New-Orleans, extending from the road leading to the bayou St. John, along Rampart-street, to the south corner of the public square, where formerly

stood fort St. Ferdinand, and running back from this corner
fourteen arpents by ten on the north eastern limit, &c.

In 1731, the ancestor of the plaintiffs purchased by public act of the India Company, their brick yard, which in the act was described as "*consistant en dix arpens sur le chemin du bayou et sept vers le terrain de Jesuits.*"

In June, 1756, Morand obtained from Kerlerce and Dauberville, acting in behalf of the French government, a concession of a triangular lot bounded by Rampart-street, the south eastern side of the brick yard, and a continuation of the north eastern limit of the brick yard to Rampart-street. Also a concession of a lot situated on both sides of the bayou road, extending on the left side in going to the bayou along the brick yard, and continuing beyond it, with its opposite side parallel, and its exterior limit perpendicular to the side line of the brick yard, and the other limit is referred to in the concession as "*le coté qui regarde la ville parallele du fond de derniers islets et a quinze toises quatre pieds de distance.*"

Morand and his family occupied a house on the premises, which he had by this grant and concession acquired. He had also there a shed, negro cabins, and two brick kilns. He made excavations for the use of his brick yard on both sides of the bayou road. He enclosed a garden on the land. The premises became known as the Morand plantation.

In October, 1756, Morand died, leaving four children, to wit: Marie Morand, Charles Morand, Vincent or Chevalier Morand, and Charles Louis or Doquemenil Morand, who were all minors. The petitioners are the grand children and descendants of these, except of Doquemenil Morand, who died without issue. In consequence of the minority of the heirs, the property or plantation of their father, was farmed out until the 30th of January, 1772, when in order to effect a partition, an inventory and appraisement of the plantation were made. The Spanish tribunal then ordered the property of the succession to be sold at public auction. The assessor-general superintended the sale, and the process verbal of the adjudication states, "that in order to complete the antecedent decree, they proceeded to the fourth and last inquiry *de la*

## 228     CASES IN THE SUPREME COURT

EASTERN DIS.
March, 1833.

MORAND'S
HEIRS
vs.
MAYOR, ETC. OF
NEW-ORLEANS.

*finca y habitacion*, together with the cattle and sheep mentioned in the annexed interrogatories. It further states that the said plantation, with the utensils and cattle, were adjudicated to Charles Morand, the son, as the highest bidder, conformably with the before mentioned interrogatories." This sale took place April 7, 1772. Charles Morand, the son and heir, sold the plantation, containing seventeen arpents front on the rear of the city, and running back seven arpents, but with its appurtenances as he purchased it at the sale, limited in its rear by lands of Doquemenil Morand to Paul Moreau, by public act passed the 25th of April, 1775. In March, 1800, this plantation, by the name of the *Morand plantation*, was purchased at the sale of Paul Moreau's succession, by Claude Tremé and Julie Moreau, his wife, and daughter of P. Moreau; and on the 17th of March, 1810, it was sold by Tremé and wife, to the corporation of New-Orleans. During the interval, from 1756 to 1810, different persons had lived on and possessed different parts of the Morand plantation, under the successive proprietors up to its purchase by the city. Since the latter purchased it, the whole has been laid out into lots, and now forms part of the city, and is in possession of the various proprietors of said lots.

The evidence of the case showed that the whole of the plantation as owned by the Chevalier Morand in his lifetime, as far as the limits of Doquemenil Morand's land, now owned by Griffon, was possessed by the successive vendees from 1772 to 1810.

The defendants pleaded a general denial, and the prescription of ten, twenty and thirty years. They completed a chain of title from the adjudication in 1772, to the purchase by them from Claude Tremé and wife in 1810, whom they cited in warranty.

Judgment was rendered by the District Court for the defendants, and the plaintiffs appealed.

*Strawbridge*, for appellants.

*Moreau Lislet & Eustis*, *contra*, contended as follows:

EASTERN DIS.
March, 1833.

MORAND'S
HEIRS
vs.
MAYOR, ETC. OF
NEW-ORLEANS.

1. The possessions of the ancestor of the plaintiffs are comprised in three principal separate tracts, and were acquired in 1731 and 1756. It cannot be contended that any of these tracts have been sold separately, because in the location assigned by the plaintiffs to the defendants, portions of each of the tracts are given to them.

2. There is nothing in the evidence which shows that any one of them was a separate establishment, or which contravenes the idea that all the land in that direction held by the ancestor, Morand, was not included under the denomination by which the estate was advertised and sold.

3. The corporation holds the premises in controversy under an adjudication on the 7th April, 1772, to Charles de Morand, the son, when the sale of his ancestor's succession took place. The words of the adjudication are, *finca y habitacion dicha tierra y habitacion.*

4. It cannot be contested, and it has been fully conceded, that this adjudication is a sale *per aversionem*, but it is contended that the whole estate of Morand did not pass by the adjudication, but merely the quantity mentioned in the inventory, leaving to the ancestor of the present plaintiffs, the immediate heirs of Charles de Morand, according to their location, a large space of ground situated between the public square and Ursuline-street, extending back in the rear to the plantation of Griffon.

5. A reservation of any part is inconsistent with a sale *per aversionem.* The effect of a sale *per aversionem* is to destroy an admeasurement, or any designation of quantity; this is of its essence, and which distinguishes it from sales *per mensuram.* In the sale *per aversionem*, the *object* is sold and the *quantity* is immaterial. *Cuney* vs. *Archinard*, 5 *Martin*, *N. S.* 242. *Pothier, contrat de vente, nos.* 254, 255. *Digest, lib.* 18, *tit.* 1, *lex.* 40, *sec.* 2. *Ibid. lib.* 19, *tit.* 1, *lex.* 42. 2 *Hulot*, 550. 3 *ibid.* 7. *Pandects, translated by Breard Neuville, vol.* 19, *nos.* 68, 71, *p.* 433, 441. *Faria, Commentary on Corruvias, vol.* 4, *p.* 34, *no.* 30. 2 *Johns.* 37. 7 *id.* 217. 15 *id.* 471. 18 *id.* 449. *Gomez, varias resolutiones, vol.* 1,

EASTERN DIS.
March, 1833.

MORAND'S
HEIRS
vs.
MAYOR, ETC. OF
NEW-ORLEANS.

*part 2, ch. 2, no.* 16. *Dictionaire du Digeste, verbo vente, p.* 555, *no.* 71.

6. The words used in the act of adjudication, are *finca y habitation.* The meaning and effect of these expressions are *land* and *plantation.* The Morand plantation was the only settlement on the bayou road this side of the plantation of Griffon, between it and the city. It was called and known by the name of its proprietor. The other plantation is mentioned in the inventory, as a plantation *a Tchoupitoulas,* and is described in the sale of the 8th of April, 1772, as belonging to the succession of the late C. de Morand. The Morand plantation is called the principal plantation, in the partition of Morand's succession. It was his last place of residence, and upon it the sale was made under the denomination before recited.

7. The sale was made without reservation of any part of the Morand plantation. The purchaser was one of the owners, and consequently well acquainted with the proceeding in relation to the affairs of the succession. He expressly says in his sale to Paul Moreau, that he sells the property as of about ten arpents fronting the city, by a depth of seven on the bayou road, and by a depth of twenty-two arpents on the other side of the bayou road, with the buildings, dependencies, &c., bounded on one side by the tract of Docquemenil Morand, (now Griffon's) and on the other by the city, &c.

8. If the sale of 1772, be a sale *per aversionem,* as it is admitted to be; if it be of the Morand plantation, and if the boundary proximate to the city be of ten arpents fronting to the city, the land in question, part of the circus square, passed to C. de Morand, and from the plaintiffs' ancestor.

9. The defendants claim and possess under complete titles. Claude Tremé, under whom we claim, received and delivered to us the original titles. We possess to the extent of our titles, and we invoke the benefit of prescription; of the benefit of half a century. The record contains a full account of the ages of the parties plaintiff, and of the births and deaths of their ancestors, from 1772 to the institution of this suit. From this it will appear prescription is complete against the whole of them.

EASTERN DIS.
March, 1833.

MORAND'S
HEIRS
vs.
MAYOR, ETC. OF
NEW-ORLEANS.

10. The laws of prescription which govern the case, are those of Spain and not of France, up to the repeal of the former in 1828. In this case the Spanish laws are authority, and the French are not. The Roman law being the foundation of the Spanish, is not without its authority, as has been repeatedly recognised by this court. From 1825, we have the *Louisiana Code*.

11. By the Spanish law, possession of an immovable ten years, in good faith, and holding by a just title, such as by purchase, exchange, donation, or as a legacy, while the owner was in the country, or twenty years if out of it, such person will acquire the thing by prescription. *Partida*, 3, 29. 18.

12. If a man have continued the possession of an immovable thirty years or more, and no suit brought against him during the time, he will acquire it by prescription; even if it has been stolen, or obtained by violence or robbery. In this prescription, good faith is not required. *Partidas*, 3, 29, 19 and 21. 6 *Febrero*, 2, *lib.* 3, *ch.* 2, *sec.* 4, *no.* 457. *Institutes Civil Law of Spain*, 108. *Johnson's translation.*

13. Immovable estates may be prescribed after thirty years possession, though possessed without title and knavishly. *Old Civil Code, art.* 66, *p.* 486.

14. All actions, real, personal and mixed, are prescribed in thirty years. *Recop. lib.* 4, *title* 15, *law* 6. *Institutes Civil Law of Spain*, 109.

15. The person pleading this prescription, is not obliged to produce any title, nor can it be alleged against him that he acted knavishly. *Civil Code, art.* 65, *p.* 486.

16. It cannot be disputed here that the defendants and their predecessors, had the only kind of possession of the lots in question, of which the property was susceptible; at least we had civil possession of them, which is as available to the party as corporal possession. *Partidas* 3, 30, 2. *Institutes of the Civil Law of Spain*, 105.

17. The testimony shows the corporation, and those under which it claims, possessed the premises up to the uttermost limits of the Morand possessions bordering on Griffon's line, since April, 1775, without interruption.

EASTERN DIS.
*March*, 1833.
========
MORAND'S
HEIRS
*vs.*
MAYOR, ETC. OF
NEW-ORLEANS.

18. A reference to the births and deaths of the children and descendents of Charles Morand, senior, as proved in the record, will show that the prescription of thirty years has run against all the plaintiffs.

MATHEWS, J. delivered the opinion of the court.*

In this case, the plaintiffs, as heirs to the succession of their their ancestor, Charles Morand, sen. claim a tract of land, situated in the angle formed by the bayou-road and the then outward limit of the city of New-Orleans, now Rampart street, extending from the said road leading to the bayou St. John, along Rampart street, to the south corner of the public square where formerly stood fort St. Ferdinand, and back from said corner fourteen arpents, by ten on the north-eastern limit, &c.

The defendants deny the allegations in the petition, and set up title in themselves, as derived through several *mesne* conveyances from the same person under whom the plaintiffs claim.

Judgment being rendered in the court below in favor of the former, the latter appealed.

The evidence of the case shows, that Charles Morand, sen., was, at the time of his death, the grantee and owner of several tracts or parcels of land, situated on the road of the bayou St. John, on both sides, and fronting on the rear limit of the city. These tracts were adjoining to each other, in such a manner as to be capable of forming, together, one consolidated plantation or farm. The grantee and owner, at and previous to the time of his death, made his residence and had his principal establishments, near to the bayou-road, and on the left side thereof in going from the city to the bayou St. John. On this side is situated the tract called the *Briqueterie*, which he had acquired by purchase from the

---

* This opinion was pronounced at the last June term, on the principal questions involved in the case; and the following one was pronounced at the present term, on the question of prescription, as to part of the tract in dis pute.

French West India Company in 1731; adjoining thereto,
and between it and the limit of the city, he obtained, by
concession from the French government, in June 1756, a tri-
angle of land containing eleven superficial arpents. In the
same manner and at the same time, he acquired another tract,
adjoining the Briqueterie, and fronting on the city, (in the
greater extent of its front,) on the right hand side of the
bayou road, and extending to a certain depth on a line paral-
lel to the side line of the tract which he had purchased from
the Company of the Indias, &c. The land now in dispute,
is situated on the base of the triangular tract, and may extend
into that which was acquired under the name of the Brique-
terie.

In the month of October, one thousand seven hundred and
fifty-six, the owner of this property died, leaving as his heirs
four children, all minors. In November, of the same year,
an inventory was made of his succession, in which were
noted, amongst other things belonging thereto, several of the
title papers of the deceased, &c. The plantation on which
he resided is mentioned in the inventory, but seems not to
have been appraised.

In the investigation of this cause, it is deemed unnecessary
to notice any other proceedings which took place, relating to
the succession of the deceased, until February, one thousand
seven hundred and seventy-two, at which time an inventory
and appraisement were made of it, with a view to a sale and
partition amongst the heirs. In pursuance of the intention
to partition the estate, it was sold at auction, and on the 7th
of April, one thousand seven hundred and seventy-two,
Charles Morand, the son and one of the heirs of the intes-
tate, became the purchaser, by regular adjudication, of the
principal plantation or farm, together with its appurtenan-
ces, which belonged to the succession of his father, situated
on the bayou road where it leaves the city, (*finca y habita-
cion sita a la salida de esta ciudad, en el camino del bayou.*)
This adjudication took place in reference to the inventory
which had been made in the month of February preceding,
in which the plantation is described in the following manner:

30

Eastern Dis.
 March, 1833.

MORAND'S
 HEIRS
 vs.
MAYOR, ETC. OF
NEW-ORLEANS.

"*Dier arpanes que dixieron tener d'ha tierra en frente de la ciudad, sobre el fundo de siete, que corren sobre el camino del d'ha bayou, en donde estan la casa principal, &c. y sobre trente y dos de fundo del otro lado del camino,*" &c.

As both the parties to this action claim title, immediately or mediately, from the original grantee and proprietor, no question can be raised in relation to the validity of his title to the land in dispute; and no objection has been made to the *mesne* conveyances by which the defendants acquired title finally from Claude Tremé, their immediate vendor.

The first question to be decided, relates to the location and quantity of the land which was transferred to Charles Morand, jun. under the adjudication to him of the plantation (*finca y habitacion*) which belonged to the succession of his father, as described in the proces-verbal.

We have already seen how this plantation was defined and limited, by the description contained in the inventory, in reference to which the sale was made. The persons who officiated in making that instrument, said that it contained ten arpents front on the city, with seven in depth, which run on the bayou road, &c.

But, according to the delineations of the plans of survey, made to aid in the examination of the respective claims and pretensions of the parties now litigant, it is discovered that the three tracts of land which belonged to the estate of Morand, sen. and which fronted, in the greater part of their extent, on the city, have a front of fourteen arpents, of which about three on the right hand side of the bayou road, did not touch the limit of the city, at the time the inventory of 1772 was made; as the city did not then extend so far as the entire front of the lands granted to the original grantee, and acquired by purchase in 1756 and 1731.

The adjudication having been made of an entire plantation, and for a whole sum as the price, it is admitted that it partakes of the nature of a sale *per aversionem*, whether it be such, or not, we deem it useless to inquire.

Where a plantation was sold as containing ten ar-   Leaving, therefore, out of view, the authority cited to show the legal consequences of a sale of that kind, as being unne-

cessary to support the pretensions of the defendants, we are of opinion, that Charles Morand, jun. under whom they claim, acquired title, by the adjudication made to him in April, 1772, to ten arpents fronting on the city, with a depth of seven, running on the base line of the triangular tract, and continuing, for quantity, on the upper or south-western line of the tract of the Briqueterie, and a depth of twenty-two on the right hand side of the bayou road.

EASTERN DIS.
*March*, 1833.

MORAND'S
HEIRS
*vs.*
MAYOR, ETC. OF
NEW-ORLEANS.

pents fronting on the rear limit of the city of New-Orleans, with seven in depth which run on the bayou road, and the *locus in quo* was found to measure fourteen arpents in front, of which three, on the right side of the road, going to the bayou, did not touch on the then limit of the city, the vendee was decreed to take ten arpents in front, beginning at the corner of the tract left of the bayou road, with the corresponding depth.

This opinion is formed in accordance with our understanding of the description given of the plantation, in the inventory of 1772, and the terms of the final adjudication of it, in the month of April of that year; and of the plans or plats of survey, made in conformity to the grants, &c. of the *locus in quo.*

It is contended by the counsel of the plaintiffs, that in order to satisfy the call for the side line of seven arpents in depth, a point must be assumed on the rear limit of the city, from which the distance required will reach the bayou road at the place where the principal house occupied by the original proprietor of the plantation, in his life time, was situated.

To such a construction as this, of the terms used in the inventory, we are unable to give our assent. It is true, that the persons who were engaged in inventorying and appraising the property of Morand's succession, seem not to have referred, specifically, to the plans of the different tracts of land which constituted the entire plantation on which the deceased had resided, and which was adjudicated to his son. They, however, describe it as having ten arpents in front of the city, on a depth of seven, which run on the bayou road, where are the principal house, and other buildings, and improvements.

This inventory was made with a view to the partition of the estate of the deceased amongst his heirs; and it may fairly be presumed, that the intention of those who were engaged in the partition, was to sell the whole of that estate in such parcels as might facilitate the adjudication, and procure a just price for the property. It cannot be believed, that

EASTERN DIS.
March, 1833.
═══════════
MORAND'S
HEIRS
vs.
MAYOR, ETC. OF
NEW-ORLEANS.

If, in the description under which a plantation is sold for partition among the heirs and co-proprietors, there are words of a doubtful import, they must be construed so as to refer to a sale of the entire plantation.

they intended, by the description given of the principal plantation, to divide it into two or more parts, or parcels, and sell one only, leaving the others to be disposed of at a future time, or retained for the heirs. This, however, would result from the pretensions of the plaintiffs, if their views must be carried into effect. The purchaser of this plantation bought it as having ten arpents fronting on the rear of the city, &c., and seven in depth on the left side of the bayou road, to run on said road, not to run to it. The word used in the inventory is *sobre*, not *hasta*, which should have been used if it had been intended to fix the principal house on the road, as the terminating point of this line. But it is impossible, according to the designation of the inventory, which gives ten arpents to front on the city, that this number can be had, unless the side line given as one of the limits of the plantation, be run from a point on the front limit at a considerable distance from the place where the bayou road leaves the city, and to the left of said road. This side line cannot, therefore, coincide with the road. The terms of the inventory, however, require it to be run on the road; but to run it immediately there, would destroy the call for ten arpents in front; therefore, this line cannot, with propriety, be thus run: and it would be equally inconsistent with the description of the inventory, to run it from a point, arbitrarily assumed, on the limit of the city, to terminate on the road at the distance required, because such a direction or course is not designated in that instrument, and would be wholly in opposition to all the plans of survey made in conformity to the various grants of the tracts of land which constitute the plantation sold. This line should, in our opinion, commence at a point on the limit of the city, which will give to the purchaser ten arpents front on said city, and run in a direction as nearly parallel with the bayou road, as the courses of the tracts of land which constitute the plantation bought, will permit. The buyer was bound, according to the terms of the inventory and adjudication, to take ten arpents front on the city; to obtain this number of arpents, one extreme or other of the grants fronting on the place designated, must be assumed as a point of beginning, and the most proper of these extreme points, ap-

EASTERN DIS.
*March*, 1833.
=========
MORAND'S
HEIRS
*vs.*
MAYOR, ETC. OF
NEW-ORLEANS.

pears to us, to be that which gives the whole front, as called for, on the city; and this we believe to be, according to the plans axhibited in the case, the base line of the triangular tract, at the point where it touches the city. It is pretty evident, from the testimony of the cause, that a line drawn as contended for by the plaintiffs, would not include all the improvements which were on the plantation at the time of its sale.

The circumstance of the *mesne* proprietors having executed acts of ownership, more particularly in relation that part of the plantation situated on the right hand side of the bayou road, cannot, in our opinion, be opposed on any just principles of interpretation, to the construction which has been given to the terms of the inventory and adjudication. Title to property, and possession or acts of ownership, are distinct things; the latter does not imply the former; but the former may always induce the latter, whenever individual rights can be enforced by judicial authority. The title, as acquired under the adjudication, and which has been regularly transferred to the defendants, cannot be affected by the manner in which the intermediate proprietors possessed and and used the land, plantation *finca y habitacion*, or by whatever name the thing sold may be called. Neither can the title thus acquired be affected by the occupancy of part of it as a public fort, or fortification, except so far as such occupancy might operate to prevent acquisition of title by prescription.

The title to a tract of land, acquired by adjudication, and which has been regularly transferred to the present occupant, is not affected by the manner in which the intermediate proprietors possessed and used the land, except so far as prescription may be interrupted.

It must be admitted, even in support of the rights claimed by the plaintiffs, that Morand, sen. was the lawful proprietor of all the land immediately in the rear of the city, and up to its limit, in that quarter which was embraced by his several grants and purchase from the West India Company. Consequently no question can be usefully raised, in the present case, as to the true meaning of the words *frente* or *face*. The legal import of these terms, as used in concessions and sales of land in this country, was much commented on in the multifarious suits, relating to the alluvion in front of the suburb St. Mary, heretofore determined by the tribunals of the late territorial government, and those of the state; and it is believed, that these words (although they may occasionally be merely descriptive,) generally carry grants of land to the

EASTERN DIS.
*March*, 1833.
━━━━━━
MORAND'S
HEIRS
*vs.*
MAYOR, ETC. OF
NEW-ORLEANS.

object designated as the front, &c., where nothing intervenes to prevent this effect.

If any part of the *finca y habitacion* which belonged to the succession of Morand, the father, did not pass by the adjudication to his son, it was that part which did not front on the city at the time of said adjudication, and any quantity adjacent thereto, necessary to curtail the whole front so as to leave ten arpents. This part, however, is not claimed in the present action.

We deem it useless to notice very particularly, the contest raised in the course of argument, relative to the signification of the Spanish words *finca y habitacion*, and the French word *habitation*; for, if it be admitted, that the latter alone would not convey the idea which, in English, is attached to the word plantation, yet, when united, they certainly mean something more than a mere house for dwelling in. The term *habitation*, in the French language, seems to have been used in some of the colonies of that government, to convey the idea of what is called, in English, a plantation or farm; and it is shown, by many examples cited by the counsel for the defendants, that the same word *habitacion*, in Spanish, has been frequently used by the officers of the Spanish government, after the acquisition of Louisiana from the French king, in the same manner as it had been previously used in the colony by the first proprietor. And this must evidently be the manner in which it was used in the present instance, or we should have a dwelling place or house, described as having ten arpents in front. *Usus est arbiter linguæ;* and words, though of various significations, must always be received in that sense which renders most intelligible writings containing them.

Being of opinion that Charles Morand, jun. acquired title to the land in dispute, by the adjudication of 1772, and that the title thus acquired has been regularly transferred to the defendants, it is unnecessary to examine any other question in the cause.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.